# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | |
| ) | |
| vs. ) | Case No. 12-40020-JAR |
| ) | No. 12-4134-JAR |
| JENNIFER HUGHES-BOYLES, ) | |
| ) | |
| Defendant/Petitioner, ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Jennifer Hughes-Boyles' Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct a Sentence by a Person in Federal Custody (Doc. 42). Petitioner claims that her counsel provided ineffective assistance. The Government has responded, and Petitioner has filed a reply. After a careful review of the record and the arguments presented, the Court denies Petitioner's motions without further evidentiary hearing because Petitioner has not met her burden in showing ineffective assistance of counsel.

**I.    Legal Standards**

Under 28 U.S.C. § 2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, "the judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the

moving party is not entitled to relief, the judge must dismiss the motion."

An evidentiary hearing must be held on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."[1] Petitioner must allege facts which, if proven, would warrant relief from his conviction or sentence.[2] An evidentiary hearing is not necessary where the factual allegations in a § 2255 motion are contradicted by the record, are inherently incredible, or when they are conclusions rather than statements of fact.[3]

## II. Background

On February 10, 2012, a one-count criminal Information was filed in accordance with a negotiated Plea Agreement. On February 24, 2012, Petitioner appeared before this Court and entered a plea of guilty to one count of bank fraud, in violation of 18 U.S.C. § 1344.[4] Pursuant to the Plea Agreement, Petitioner waived the right to appeal or collaterally attack any matter in connection with the prosecution, conviction, or the sentence to be imposed. This waiver did not extend to subsequent claims of ineffective assistance of counsel or prosecutorial misconduct. In exchange, the Government agreed to not file any additional charges, to recommend a sentence at the low end of the guideline range, and to recommend a two-level reduction in the applicable offense level for acceptance of responsibility.

---

[1] 28 U.S.C. § 2255(b).

[2] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995).

[3] *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Hatch*, 58 F.3d at 1471 (stating that "the allegations must be specific and particularized, not general or conclusory"); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims which are merely conclusory in nature and without supporting factual averments).

[4] Doc. 13.

In the petition to enter a guilty plea and the Plea Agreement, Petitioner affirmed that her plea was voluntary and that she was satisfied with the advice and representation of her counsel, Benoit Swinnen. Petitioner acknowledged that her counsel fully informed her on all matters, including the nature of the charge, all lesser included offenses, and all possible defenses she might have had. At her change of plea hearing, the Court engaged Petitioner in a colloquy about her plea in accordance with Fed. R. Crim. P. 11(b)(1). During the colloquy, Petitioner affirmed that she had read and understood the terms of the Plea Agreement, confirmed that she was satisfied with the advice and assistance of her counsel, and affirmed that her plea was entered freely and voluntarily. The Court found that Petitioner's plea was entered into freely and voluntarily and was not the result of ignorance, fear, inadvertence, or coercion.

On May 7, 2012, the Court entered a preliminary order of forfeiture, which included a money judgment of $596,201.22.[5] On May 25, 2012, Mr. Swinnen submitted a Sentencing Memorandum and Motion for Variance with several letters of support from community members attached as exhibits.[6] Petitioner sought a request for variance under 18 U.S.C. § 3553(a) and asked for ten to sixteen months of house arrest, three hundred hours of community service, a minimum fine, and a just restitution order.

On May 31, 2012, the Court conducted a day long evidentiary hearing on the issue of restitution. The Government called one witness from the victim bank and presented multiple exhibits to substantiate the amount of restitution owed. Petitioner called one witness from the Shawnee County Appraiser's office and presented multiple exhibits showing a lower restitution

---

[5]Doc. 18.

[6]Doc. 22.

amount than the Government's evidence. At the conclusion of the hearing, the parties were given ten days to file post-hearing briefs in support of their arguments on the amount of restitution owed.[7] Following briefing, on June 21, 2012, the Court found the Government's evidence persuasive and entered an order finding restitution in the amount of $712,144.89 should be awarded to the victim bank.[8]

The Court held a final sentencing on September 10, 2012. The PSR calculated the total offense level at 21, criminal history category of I, and a guideline range of 37 to 46 months of imprisonment. On September 6, 2012, Mr. Swinnen filed a Supplemental Sentencing Memorandum in support of Petitioner's request for downward variance and mitigation of her sentence.[9] At the sentencing hearing, the Court heard testimony from one Government witness, four individuals who spoke on Petitioner's behalf, and Petitioner. Based on Petitioner's sentencing memoranda and presentation at the sentencing hearing, the Court granted Petitioner's motion for a downward variance in part. Petitioner was sentenced to thirty months' custody, seven months below the low end of the recommended guideline range. Petitioner did not file a direct appeal from the Court's sentence.

On October 17, 2012, Petitioner filed the instant motion to vacate, set aside, or correct sentence. The motion was filed by a new attorney for Petitioner, and Mr. Swinnen has withdrawn from the case.

### III. Discussion

---

[7] Doc. 24.

[8] Doc. 29.

[9] Doc. 35.

4

In her § 2255 motion, Petitioner claims that her counsel provided ineffective assistance, resulting in a deprivation of her rights. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for [her] defence."[10] A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*.[11] First, a defendant must show that her counsel's performance was deficient in that it "fell below an objective standard of reasonableness."[12] To meet this first prong, a defendant must demonstrate that the omissions of her counsel fell "outside the wide range of professionally competent assistance."[13] This standard is "highly demanding."[14] Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[15] In all events, judicial scrutiny of the adequacy of attorney performance must be strongly deferential: "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[16] Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error; "every effort should be made to 'eliminate the

---

[10] U.S. Const. amend. VI.

[11] 466 U.S. 668 (1984).

[12] *Id*. at 688.

[13] *Id*. at 690.

[14] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[15] *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and citations omitted).

[16] *Strickland*, 466 U.S. at 689.

5

distorting effects of hindsight.'"[17]

Second, a defendant must show that her counsel's deficient performance actually prejudiced her defense.[18] To prevail on this prong, a defendant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different."[19] A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."[20] This, in turn, requires the court to focus on "the question whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[21] When ineffective assistance of counsel is alleged to have occurred at the plea stage, the defendant must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process."[22] "In other words . . . that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial."[23]

A defendant must demonstrate both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.[24] "The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on

---

[17]*Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

[18]*Strickland*, 466 U.S. at 687.

[19]*Id*. at 694.

[20]*Id*.

[21]*Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[22]*Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

[23]*Id*.

[24]*Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

6

the ground of lack of sufficient prejudice . . . that course should be followed.'"[25]

Petitioner presents multiple arguments that her counsel provided ineffective assistance. Petitioner's arguments address three separate issues. First, Petitioner argues she did not knowingly and voluntarily enter into the Plea Agreement, due to alleged ineffective assistance of counsel. Second, Petitioner argues that counsel provided ineffective assistance because counsel failed to present evidence or raise arguments at both the restitution hearing and the sentencing hearing. Third, Petitioner argues that counsel provided ineffective assistance because he was burdened by a conflict of interest with the victim bank.

### A. Claims for Failure to Enter the Plea Agreement Knowingly and Voluntarily due to Ineffective Assistance

Petitioner first argues that she did not enter the Plea Agreement knowingly and voluntarily due to the alleged ineffective assistance of counsel. Petitioner argues that her attorney provided ineffective assistance because: (1) Mr. Swinnen pressured her to enter the Plea Agreement when he told Petitioner to not come back to his office if she pulled the Plea Agreement; (2) Mr. Swinnen did not adequately explain the waiver of appeal and collateral attack provisions contained in the Plea Agreement; and (3) Mr. Swinnen did not adequately explain the terms of the Plea Agreement, particularly as they related to restitution.

#### 1. Alleged Pressure to Enter the Plea Agreement

Here, Petitioner fails to satisfy the second prong of *Strickland* because she fails to show a reasonable probability that, absent the alleged error, she would not have pled guilty and proceeded to trial. Specifically, Petitioner does not argue that she would not have pleaded guilty

---

[25]*Id.* (quoting *Strickland*, 466 U.S. at 697); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

and would have proceeded to trial absent the alleged pressure to enter the plea, but only argues that the alleged pressure rendered the plea involuntary and prevented her from seeking out a second opinion about the Plea Agreement. This is not enough to successfully allege an ineffective assistance of counsel claim. Petitioner has not shown a reasonable probability sufficient to undermine the outcome of the plea process.

Even if Petitioner had argued that the outcome of the plea process was undermined and she would not have plead guilty absent the alleged pressure to do so, Petitioner's claim would still fail because her claim is wholly refuted by the evidence in the record. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."[26] Such statements are not necessarily an absolute bar to post-conviction relief because a defendant may still claim that her representations were so much the product of misunderstanding, duress, or misrepresentation that it rendered the guilty plea constitutionally inadequate. That is not the case here.[27]

The record clearly demonstrates that Petitioner voluntarily entered her guilty plea and did not enter the plea under duress. In the petition to plead guilty, Petitioner indicated, among other things that, she was not threatened or coerced to plead guilty, was satisfied with the advice and help of her attorney, and was actually guilty of the charges against her. Similarly, in the Plea Agreement, Petitioner affirmed that the agreement was not the result of any threats, duress or coercion, and acknowledged that she entered the agreement freely and voluntarily. Finally, at

---

[26]*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

[27]*U.S. v. McKinney*, 477 Fed. Appx. 497, 499 (10th Cir. 2012).

8

her change of plea hearing the Court lead Petitioner through the plea colloquy in accordance with Fed. R. Crim. P. 11(b)(1). During the colloquy, petitioner again affirmed that she voluntarily entered the Plea Agreement, affirmed that she was satisfied with the representation and advice given by her attorney, and affirmed that her decision to plead guilty was free and voluntary and not due to any pressure or coercion. At the end of the hearing, the Court found that Petitioner's plea was made freely and voluntarily and was not made out of ignorance, fear, inadvertence or coercion.

Petitioner's claim of ineffective assistance of counsel based on her counsel's alleged pressure to enter the Plea Agreement fails to satisfy the prejudice prong of *Strickland*. Petitioner has failed to show a reasonable probability that the results of the plea process would have been different absent the alleged pressure to enter the plea. Moreover, Petitioner's statements during the change of plea hearing confirm that she was not pressured or coerced to plead guilty.

### 2. Explanation of the Waiver Provisions

Petitioner argues that her attorney inadequately explained the wavier provisions in the Plea Agreement, causing her to involuntarily and unknowingly enter her plea. Here, Petitioner fails to show that her attorney's conduct fell outside the wide range of professional competent assistance of counsel that is necessary to meet the first prong of *Strickland*. The Court begins with a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance. The record only bolsters this presumption. Specifically, at the change of plea hearing, Petitioner affirmed that she entered the agreement knowingly and voluntarily, that she was satisfied with the representation and advice given by her attorney, and that she fully understood the terms of the agreement. The Court expressly asked Petitioner whether she

understood that she had agreed to waive certain rights to appeal her sentence. Petitioner replied in the affirmative. Therefore, based on Petitioner's own declarations in open court, nothing suggests that Mr. Swinnen's explanation of the waiver provisions fell below an objective standard of reasonableness. Petitioner confirmed that Mr. Swinnen sufficiently explained the terms that she understood the terms of the Plea Agreement and that she knew she could not appeal her sentence; her argument fails the first prong of *Strickland*.

Even if Mr. Swinnen's conduct was found to be objectively unreasonable in explaining the waiver provision of the Plea Agreement, Petitioner's ineffective assistance claim still fails to meet the second prong of *Strickland*. Again, Petitioner only argues that her counsel's alleged error caused her to unknowingly and involuntarily enter the Plea Agreement. Petitioner does not allege that the results of the plea process would have been different absent the alleged error. Without a reasonable probability that Petitioner would not have pled guilty and would have proceeded to trial, Petitioner fails to meet the prejudice prong of *Strickland*.

### 3. Explanation of Terms in the Plea Agreement

Petitioner's claim that her attorney did not advise her correctly about the restitution provision in the Plea Agreement also fails to meet the first prong of *Strickland*. But Petitioner represented to the Court that she understood the terms of the Plea Agreement and that she was well aware that restitution would apply. At the change of plea hearing, Petitioner testified that she had an opportunity to read and discuss the Plea Agreement with her attorney and understood the terms of the agreement. During the hearing, the Government twice stated that the Plea Agreement specifically allows for restitution when listing out the maximum penalties that could be assessed under the agreement. Also, the Court expressly informed Petitioner that the amount

of restitution was "considerable." Petitioner responded that she understood. The Court finds that Petitioner has not overcome the presumption that Mr. Swinnen's performance fell within the wide range of reasonable professional assistance. Petitioner stated that she was well apprised of the restitution related term in the Plea Agreement. As such, this Court concludes that Mr. Swinnen's performance fell within the wide range of reasonable professional assistance.

Moreover, even if counsel's performance fell below an objective standard of reasonableness, Petitioner's claim still fails because she does not meet the second prong of *Strickland*. Petitioner only argues that the alleged deficient explanations of the terms caused her to enter the agreement unknowingly and involuntarily. Petitioner does not argue that she would not have entered the agreement and proceeded to trial had she received sufficient explanations of the terms of restitution in the Plea Agreement. Therefore, Petitioner does not present any reasonable probability that, but for counsel's errors explaining the terms of the Plea Agreement, she would have plead not guilty and proceeded to trial.

### B. Ineffective Assistance Claims Stemming from the Restitution Hearing and Sentencing Hearing

Petitioner argues that, at her restitution hearing and sentencing hearing, her counsel did not present evidence in support of a departure and forced her to limit certain mitigating evidence. The Court discusses each issue in turn.

#### 1. Restitution Hearing

Petitioner argues that her attorney should have requested that the Court leave the restitution issue open, allowing her to reduce the restitution amount based on any receipt of loan payments or proceeds obtained from any future sale of property. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

11

assistance."[28]  Strategic and technical decisions are presumed correct unless they were completely unreasonable and bore no relationship to a defense strategy.[29]  Petitioner has failed to demonstrate that the omission of her counsel fell outside the wide range of reasonable professional assistance.

Mr. Swinnen's alleged omission at the restitution hearing was completely reasonable under the circumstances.  Mr. Swinnen's strategy was to advocate for immediate and substantial reductions in the restitution amount, which was a reasonable defense strategy.  The restitution hearing took place over an entire day.  Mr. Swinnen vigorously cross-examined the Government's witness and questioned the methods used by the Government to calculate the amount of loss incurred.  Petitioner then called her own witness who utilized a different calculation method to substantiate a lower restitution calculation.  Petitioner also submitted multiple evidentiary exhibits to advocate for a lower amount of restitution.

At the end of the restitution hearing, the Court took the matter under advisement and requested that the parties submit post-hearing briefs within ten days.  Petitioner's counsel provided a post hearing brief and raised four issues disputing the Government's calculation of the amount of restitution owed to the victim bank.   Those issues pertained to: whether the claimed loss was sufficiently connected to the offense of conviction; whether the Bank's estimate of closing costs or selling costs should be included in the estimate of loss; whether the appraised value of the collateral should be discounted to account for the historical sales performance of bank-owned property; and what constitutes the better estimate of the market

---

[28] *Strickland*, 466 U.S. at 689.

[29] *Fox*, 200 F.3d at 1296.

value of the properties. After careful consideration of the evidence, this Court found the Government's testimony and evidence on the issue of restitution more persuasive than Petitioner's evidence. This Court stated that the Government's restitution amount was a reasonable determination of the bank's actual loss and supported by a preponderance of the evidence. Counsel's performance fell within the wide range of reasonable professional assistance and Petitioner does not meet the demanding burden to show that counsel's omissions fell outside of a reasonable defense strategy. Petitioner has failed to meet the first prong of *Strickland*.

### 2. Sentencing Hearing

Petitioner argues that her counsel was deficient because he prevented her from presenting at the sentencing hearing a mitigating letter from her aunt. She also argues that her counsel agreed to limit the number of witnesses called at the sentencing hearing to four.

Here, Petitioner's arguments fail to meet either prong of *Strickland*. In regards to the first prong, Petitioner fails to show that her counsel's performance fell below an objective standard of reasonableness. Mr. Swinnen made reasonable strategic decisions. First, he did not allow Petitioner to present a letter from her aunt because he advised Petitioner that the letter may jeopardize her two-level sentencing reduction for acceptance of responsibility. Mr. Swinnen acted to protect Petitioner from any potential adverse consequences of the letter. Second, although Mr. Swinnen agreed with the Government to limit the number of witnesses at the sentencing hearing to four, Petitioner does not suggest any specific witnesses that the agreement prevented her from calling to the stand. Both of these strategic decision were reasonable and well within the realm of competent professional assistance.

Petitioner also fails to show that she suffered prejudice from her counsel's alleged deficient performance. In fact, Petitioner actually benefitted from her counsel's performance at sentencing. Counsel vigorously advocated for a downward departure throughout the proceedings. Prior to sentencing, Petitioner's counsel submitted a Sentencing Memorandum and Motion for Variance with several letters of support from the community attached as exhibits. In the memorandum, counsel submitted a request for variance under 18 U.S.C. § 3553(a), asking the Court to consider her extraordinary acceptance of responsibility, the collateral consequences that Petitioner has and will endure, her out-of-character conduct, the absence of any criminal history, and low risk of recidivism. Petitioner sought ten to sixteen months of house arrest and three hundred hours of community service. Later, counsel for Petitioner filed a Supplemental Sentencing Memorandum in support of her request for downward variance and mitigation of her sentence.

At the sentencing hearing, based on Petitioner's sentencing memorandums and presentation at the sentencing hearing persuasive, the Court granted Petitioner's motion for a downward variance in part. Petitioner was sentenced to 30 months' custody, seven months below her lowest recommended guideline range of 37 months. Petitioner has not shown a reasonable probability that the results of the proceeding would have been different absent the alleged errors. Petitioner benefitted from her counsel's performance at the sentencing hearing and has suffered no prejudice stemming from the alleged errors.

### C. Conflict of Interest

Petitioner's final allegation is the most troubling; she alleges that her attorney had a conflict of interest with the victim bank. When a conflict of interest is at issue in an ineffective

14

assistance inquiry, *Strickland's* prejudice requirement will be presumed if Petitioner shows that an actual conflict adversely affected her representation.[30] "Petitioner has the burden to show that the relationship resulted in a division of loyalties which adversely affected counsel's performance."[31]

In an attempt to show a conflict of interest, Petitioner points to five events: (1) a June 8, 2012, email sent from the president of the victim bank to Mr. Swinnen, which stated "Like I told you some time ago when you inquired about representing Jenny, everybody is entitled to good legal representation when they need it. So, I take no exception to the inquiry you made today. I have instructed Bruce to make every effort to consult with both our bonding company and the U.S. Attorney's office to discuss your proposal;"[32] (2) an August 8, 2012, email from Petitioner's counsel to Colin Wood (USAKS) inquiring about purchasing properties that were owned by Petitioner and subject to the proceedings in this matter; (3) a telephone book listing from an unknown date showing that attorney, Kathleen Urbom, was a member of Mr. Swinnen's firm and that she was allegedly known to occasionally assist with or take cases on behalf of the victim bank; (4) a property listing, that Petitioner alleges her counsel purchased from the victim bank with Petitioner acting as the loan officer; and (5) Petitioner's counsel invited employees from the victim bank to an open house at a building that he owned.

Petitioner alleges that these events likely caused counsel to advance his own interests and those of the bank, to the detriment of Petitioner. She asserts that her representation was

---

[30]*U.S. v. Solomon*, 42 Fed. Appx. 88, 90 (10th Cir. 2002).

[31]*Gleason v. McKune*, No. 11-3110-SAC, slip op. at 19 (D. Kan. July 19, 2012).

[32]Doc. 43, Ex. 9.

15

adversely affected when counsel failed to request a longer continuance in order to review a voluminous packet of documents of appraisal information provided by the Government immediately before the restitution hearing. Petitioner also raises the possibility that, due to the conflict of interest and failure to carefully review the documents, her counsel failed to challenge the amounts or methods used by the bank to determine the amount of loss.

Without more, Petitioner struggles to meet her burden showing that an actual conflict of interest existed. None of the events that Petitioner asserts clearly show that a conflict of interest conclusively existed. The email correspondence between the victim bank and Mr. Swinnen does not clearly show a conflict of interest, as counsel did not follow through on any purchase of the subject properties. The telephone book listing does not clearly show that an imputed conflict of interest existed, because there is no date or time period associated with the listing. The property appraisal form simply shows the appraisal for a house that Mr. Swinnen owns and does not provide any evidence of an actual conflict of interest with the victim bank. Nor does an invitation to an open house create a conflict of interest. The closest piece of evidence that may seem to imply a conflict of interest is the email correspondence between Mr. Swinnen and the president of the victim bank discussing Mr. Swinnen's representation of Petitioner and a proposal made by Mr. Swinnen to the victim bank.

But, even if Petitioner had alleged clear and indisputable evidence that her attorney was burdened by a conflict of interest, Petitioner's claim fails because she does not show that her representation was adversely affected by the conflict of interest. *Solomon* requires that a petitioner show that alleged conflict resulted in a division of loyalties which adversely affected

counsel's performance;[33] Petitioner has made no such showing.

Petitioner's representation was not adversely affected when Petitioner's counsel did not request a continuance to review the Government's packet of appraisal evidence. It is clear from the record that no continuance was necessary in order for Petitioner's counsel to mount a serious challenge to the amounts and methods used by the Government to substantiate the amount of restitution. At the restitution hearing, Petitioner's counsel vigorously cross examined the Government's witness and countered the Government's appraisals with evidence and testimony in support of lower amounts of restitution. Moreover, Petitioner's allegation that the conflict likely caused counsel to advance his own interests and those of the bank is conclusory and does not show that her representation was adversely affected by a conflict of interest. Upon review of the transcripts and filings, the Court finds nothing that would suggest that Petitioner's counsel failed to zealously represent Petitioner. Petitioner's conflict of interest claim fails for failure to show that her defense was adversely affected due to an actual conflict of interest.

## IV.     Evidentiary Hearing

The Court denies Petitioner an evidentiary hearing. The factual allegations alleged by the Petitioner are wholly contradicted by the record. The conflict of interest claim, which comes the closest to requiring a hearing, does not ultimately require a hearing because Petitioner has failed to show an adverse impact on her defense from the alleged conflict of interest. No evidentiary hearing is warranted because Petitioner's motion and the record of the case conclusively show that Petitioner is entitled to no relief.

## V.     Certificate of Appealability

---

[33] 42 Fed. Appx. at 90.

Rule 11 of the of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner. A court may only grant a COA "if the applicant has made a substantial showing of the denial of a constitutional right."[34] A petitioner satisfies this burden if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[35] When the adverse finding is based on procedural grounds, the petitioner must also show "'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"[36] While Petitioner is not required to demonstrate that her appeal will succeed to be entitled to a COA, she must "prove something more than the absence of frivolity or the existence of mere good faith."[37] "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it."[38] For reasons detailed above, Petitioner has not made a substantial showing of the denial of a constitutional right, and the Court denies a COA.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct a Sentence by a Person in Federal Custody (Doc. 42) is **DENIED**.

---

[34] 28 U.S.C. § 2253(c)(2). The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issue a COA. *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

[35] *Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 524 U.S. 274, 282 (2004)).

[36] *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

[37] *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

[38] *Id.* at 336.

Dated: May 17, 2013

                            S/ Julie A. Robinson

                            JULIE A. ROBINSON

                            UNITED STATES DISTRICT JUDGE